## AS TO GIVING NOTICE OF DISPUTED SUB-CONTRACTOR'S LIEN.

### Common Pleas Court of Franklin County.

STATE OF OHIO, EX REL., ETC., V. FRED W. ATCHERSON ET AL.[*]

#### Decided, 1921. ·

*Injunction—Requirement as to the Bond—Plaintiff Must Become an Obligor Thereon—Failure to Preserve Rights Under the Mechanics' Lien Law.*

1. In the absence of malice or want of probable cause for the sueing out of an injunction, no liability arises on the bond unless the party obtaining the order has become one of the obligors, and in the absence of compliance with this prerequisite to a valid bond no restraining order can issue.

2. The pendency of negotiations between the principal and a subcontractor regarding a disputed claim, does not relieve the principal contractor from compliance with the statutory requirement as to giving written notice, to the owner, of the dispute with reference to the amount due; and failure to give such notice makes it the duty of the owner to pay the subcontractor out of any money which may be owing to the principal contractor.

[*] The Court of Appeals of Franklin County dismissed the appeal in this case February 6, 1922.

*Turner, Calland & Summers,* for plaintiff.

*John R. King,* Prosecuting Attorney, and *Wilbur E. Benoy* Assist., for county commissioners.

*Perry A. Roach* and *N. E. Given,* for A. W. Burns & Co.

· SOWERS, J.

The relator, in his petition, alleges that the board of county commissioners, on or about the 16th day of October, 1920, appropriated $128,000 for the purpose of paying the costs and expense of improving West Third Avenue Road in Franklin county, Ohio, and awarded the contract therefor to A. W. Burns & Company for the sum of approximately $92,000.

The relator further says that on the 23d day of July, 1921, he filed with the defendant, board of commissioners, an affidavit and notice containing a sworn and itemized statement of the

amount and value of certain labor, which he performed and furnished as a sub-contractor under a contract entered into by and between himself and said A. W. Burns & Company, and that there is now due the said relator, on said contract, the sum of $3,228.75 for which amount he claims a lien on the funds due or thereafter to become due, to the said A. W. Burns & Company from the board of · county commissioners of Franklin county, Ohio.

The relator further says that he filed a copy of said affidavit with the recorder of Franklin county, Ohio, and within five days after the receipt of said statement by the county commissioners, they furnished the said Burns & Company with a copy thereof.

The relator further says that no other sub-contractors, material men, laborers, mechanics or other presons furnishing material, fuel or machinery, filed with the board of county commissioners any itemized statement in respect to the improvement of said West Third Avenue before the subsequent payment fell due on or before the 1st day of August, 1921, or at any time since said date.

The relator further alleges that the commissioners have failed and refused to pay the stated part of such subsequent payment on the claim of your relator, and thereupon by mandamus prays that the commissioners deliver his warrant on the treasurer of Franklin county, Ohio, in favor of the plaintiff for the amount claimed by him.

The county commissioners filed in the case, an answer consisting of two defenses. The first defense admitted most of the allegations contained in the petition and those, which were not admitted, were supported by evidence agreed to by counsel. The second defense alleged that on the 12th day of September, 1921, Burns & Company filed in the clerk of the court's office, a petition against Floyd Houser and the board of · county commissioners, said cause being numbered· 87,317. in which it was claimed that there was a difference between the parties as to amount due Houser as the result of a contract for work and labor, executed by and between Houser and Burns & Company,

and by which they also claimed certain monies due them from Houser as a result of his failure to fulfill his part of the contract. In the prayer of that petition an injunction was asked against the commissioners from paying any of said funds to said Houser.

The second defense also recites that on said day the common pleas court entered an order reciting that upon the giving of an undertaking by A. W. Burns & Company in the sum of five hundred ($500) dollars, with surety, to the approval of the clerk, a restraining order and injunction be and the same was thereby allowed to issue enjoining the commissioners from paying any voucher or order to Houser for any sum whatever, and also enjoining Houser from receiving any such order or voucher from the commissioners until further order of the court.

The second defense further recites that on September 12 the county commissioners and Houser were served with copies of the order; and that thereupon on said day the clerk of the court prepared a bond in the penal sum of five hundred ($500) dollars duly conditioned that Burns & Company and its surety would pay all damages which the defendants might sustain by reason of the injunction, which bond was on said day signed by the Royal Indemnity Company, as surety, and on the 16th day of September, 1921, was duly signed by Burns & Company, as principal, and was thereupon on the 16th day of September, 1921, duly approved by the clerk of the court.

By leave of the court in the instant case, A. W. Burns & Company filed an answer and cross petition, admitting the contract set out in plaintiff's petition, that affidavit of claim was filed by Houser as therein stated, and that thereafter, to-wit: on September 7, 1921, this defendant served a notice in writing on the board of county commissioners, and also on said Floyd Houser, that it intended to and does dispute the amount of said Houser's claim. The cross-petitioner thereupon questioned the correctness of the amount due the plaintiff, that the same is in dispute, and alleges that an amount specified as $868.95, is due them by way of counter-claim. This cross-petitioner further alleged that

on the 12th day of September, 1921, it filed its petition in this court, being case No. 87,317, setting out substantially the same facts as stated in their cross-petition in the instant case. Said cross-petitioner further alleged that it asked for an injunction against the board of county commissioners restraining it from paying any funds to said Floyd Houser. They also allege that a temporary restraining order was issued against said board of commissioners and Floyd Houser, as prayed for.

The relator filed demurrers to the second defense of the county commissioners and to the answer and cross-petition of A. W. Burns & Co.

It appears from the evidence that a temporary restraining order was approved by another branch of this court on the 12th day of September, 1921, and that the same should issue when a proper bond had been executed, in the sum of $500.

It appears further from the evidence that a bond was signed at or about that time by a surety company, but the bond was not executed and approved by the clerk of this court as contemplated and provided by law until the 16th day of September, 1921.

This case in mandamus was filed on September 15, 1921, being the day prior to the execution and approval of said bond.

The court is of the opinion that this case resolves itself into two propositions, namely, first: was the injunction, which issued, legal; and secondly, did the parties properly preserve their rights under the statute provided for the protection of sub-contractors under contracts of this character?

Section 11882, G. C., provides that:

"Unless otherwise provided by special statute, no injunction shall operate until the party obtaining it gives a bond executed by sufficient surety, to be approved by the clerk of court granting the injunction in an amount to be fixed by the court or judge allowing it," etc.

The bond in the instant case was fixed at $500 and was not executed or approved in accordance with this statute until September 16, 1921.

It is an essential part of the execution of an injunction bond

and a prerequisite to its approval by the clerk of the court, that the party securing the order of injunction shall sign the bond and become one of the obligors. Without this contractual obligation there is no liability to the obligee of the bond. In this respect it is different from the liability in the case of an appeal bond. In the case of an appeal, there is a common law liability, while in the case of an injunction there is no liability, except where obtained maliciously or without probable cause. To supply this defect in the common law, the statute requires the party obtaining the injunction to give a bond, executed by a sufficient surety. This reasoning is found in *Railway Company* v. *Railway Company*, 47 West Virginia, 745, the syllabus of which is:

"1. At common law, damages occasioned by the suing out of an injunction were not recoverable, unless the suit was without probable cause or prosecuted through malice.

"2. The statutory bond is intended to supply this defect in the common law."

The decision in this case is quite lengthy and cites ample authority in support of the rule therein announced.

It is manifest that the order of injunction which the defendant, A. W. Burns & Company, had issued against the county commissioners, in case No. 87317, was predicated and based upon the giving of a proper and sufficient bond to the approval of the clerk of this court. The authorities are clear that the issuance of such a restraining order is not valid, until such a bond is executed and approved; and therefore, the restraining order against the county commissioners and this relator was not a valid restraining order and no such order has yet been issued *Diehl* v. *Freaster*, 37 O. S., 473; *In re George*, 5 C. C., 207.

With respect to the second proposition, viz.: If the parties properly preserve their rights under the statute provided for the protection of sub-contractors under contracts of this character, the provisions of Section 8329, G. C., are controlling. This statute provides:

"The owner, board, officer, or clerk, agent or attorney thereof,

upon the receipt of such statement shall, or the lien claimant, his agent or attorney, in the name of such owner, board or officer, may, furnish the principal contractor, or sub-contractor with a copy thereof, within five days after receiving it. If such principal or sub-contractor fails within five days after such receipt by him, to notify, in writing, such owner, board, officer, clerk, agent or attorney thereof of his intention to dispute such claim, he shall be considered as assenting to its correctness. Thereupon such subsequent payment shall be applied by such owner, his agent or attorney, *pro rata,* upon such claim," etc.

The cross-petitioner, A. W. Burns & Company, did not comply with the provisions of this statute as shown by the pleadings and the admitted facts, notwithstanding the allegation in its answer that it did on the 7th day of September, 1921, serve a notice in writing on the board of commissioners, that it intended to and does dispute the amount of the relator's claim.

In this respect it might be said that there is an entire absence of allegation or proof that said Burns & Company within the five-day period notified, in writing, the board of county commissioners, or its clerk, agent or attorney, of its intention to dispute such claim, notwithstanding the fact that it is admitted that the county commissioners, within five days after the receipt of the statement of the lien claimant, relator herein, furnished said Burns & Company with a copy thereof. Manifestly the notice which Burns & Company did serve on the 7th day of September, 1921, did not comply with the provisions of the statute above recited.

Counsel for Burns & Company claim that certain negotiations were pending between the relator and this defendant, looking toward a settlement of the dispute between the parties, after the service of notice of the lien claimed by the relator; but neither of the answers filed in this case contains any allegation that such negotiations were had either before or after the time limit for filing a notice of their intention to contest the claim of the relator. Just what the nature of these negotiations or conferences were, does not appear affirmatively in the case, but it is not urged by counsel with much force that this is a sufficient

justification for Burns & Company's failure to give the notice as required by statute.

Substantially the same question has already been presented for judicial determination, and the views expressed in that case are in harmony with our interpretation of the law as applicable to the facts of the instant case. In the case referred to, *Busse* v *Voss*, 13 W. L. B., 542, the facts appear in the syllabus as follows:

1. "When a sub-contractor takes the steps prescribed by Sections 3193 (8324 G. C.) and 3194 (8325 G. C.), of the Revised Statutes, and the head contractor fails, within the time named in Section 3199 (8392 G. C.) to begin arbitration proceedings or to commence an action to adjust the account, the house-owner is bound to pay such sub-contractor out of any money which he may owe the head contractor.

2. "If, after the expiration of such time, the head contractor and sub-contractor have a conversation about the matter, and agree to meet and adjust the account, and nothing further is done, the sub-contractor repudiating the agreement, the obligation of the house-owner is not affected thereby."

In considering the facts appearing in the first paragraph of the syllabus, Judge Force in the opinion said:

"If Decker (contractor) was induced by the plaintiff to enter into negotiations, so as to prevent Decker's beginning arbitration proceedings or commencing an action within the statutory time, then the plaintiff would not be allowed to say that Decker is bound to admit the claim because he did not begin arbitration proceedings or commence an action within that time. But if nothing is done within five days, *the rights of the parties are settled by statute; they are fixed.* And although the parties should begin after that to talk about it, such talk or negotiation would not be an estoppel. It is not alleged that there was any negotiation or conversation before the expiration of the statutory time. The motion to strike out is granted."

It is a well established principle of law that statutes of this character are to be strictly construed, and the court is of the opinion that neither authority, nor even a liberal construction of this statute, supports the position or contention of Burns & Company on any point.

The court, has, therefore, reached the conclusion that by reason of the failure of the defendant, A. W. Burns & Company, to give notice as required by statute, that they cannot and should not prevent the county commissioners from issued the warrant as prayed for in the plaintiff's petition.

It further appears from the cross-petition of Burns & Company that there is some dispute between Burns & Company and Houser as to the amount due. But there is no claim that Houser is insolvent or unable to meet any judgment which might be found against him in case No. 87317, wherein the same or substantially the same allegations are alleged, which are stated in the answer and cross-petition herein.

If the claim of the cross-petitioner is justified in law, upon the trial of that case, judgment may be collected therein. Under the authorities, it appears, without any question, that mandamus is the proper procedure in cases of this character.

The court, therefore, sustains all the demurrers filed herein; finds in favor of the plaintiff on the issue joined between the plaintiff and the board of county commissioners, county auditor and county treasurer, and orders the county commissioners and the other county officials, named as parties defendant, to proceed to pay the amount of the relator's lien, as prayed for in the plaintiff's petition.